UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

IDRIS KINARD,                                         :
         Petitioner,                                  :
                                  :
         v.                                             :          No. 2:21-cv-01992
                                  :
KATHY BRITTAIN, *SUPERINTENDENT*, :
and SCI FRACKVILLE,                                :
         Respondents.                               :
_____

**O P I N I O N**
**Report and Recommendation, ECF No. 16 – Adopted in Part**

**Joseph F. Leeson, Jr.**                                          **October 31, 2022**
**United States District Judge**

## I.      INTRODUCTION

Petitioner Idris Kinard, through counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 2011 jury conviction in the Philadelphia County Court of Common Pleas of three counts of attempted murder, three counts of aggravated assault, two counts charging violations of the Uniform Firearms Act, and one count of possession of an instrument of crime.  He is serving a sentence of fifteen to thirty (15-30) years imprisonment.  Magistrate Judge Scott W. Reid issued a Report and Recommendation ("R&R") recommending that the habeas corpus claims be denied and dismissed.  Kinard has filed objections to the R&R, which Respondents contend should be sustained in part and overruled in part.  For the reasons set forth below, the R&R is adopted in part and the habeas petition is denied and dismissed.

## II.      STANDARDS OF REVIEW

### A.      R&R – Review of Applicable Law

When objections to a report and recommendation have been filed under 28 U.S.C.

§ 636(b)(1)(C), the district court must make a de novo review of those portions of the report to

which specific objections are made.  28 U.S.C. § 636(b)(1)(C); *Sample v. Diecks*, 885 F.2d 1099,

1106 n.3 (3d Cir. 1989).  "District Courts, however, are not required to make any separate

findings or conclusions when reviewing a Magistrate Judge's recommendation de novo under 28

U.S.C. § 636(b)."  *Hill v. Barnacle*, 655 F. App'x. 142, 147 (3d Cir. 2016).  In the absence of a

specific objection, the district court is not statutorily required to review the report, under de novo

or any other standard.  28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 152 (1985).

Nevertheless, the Third Circuit Court of Appeals has held that it is the better practice to afford

some level of review to dispositive legal issues raised by the report, *Henderson v. Carlson*, 812

F.2d 874, 878 (3d Cir. 1987), *writ denied* 484 U.S. 837 (1987); therefore, the court should

review the record for plain error or manifest injustice.  *Harper v. Sullivan*, No. 89-4272, 1991

U.S. Dist. LEXIS 2168, at *2 n.3 (E.D. Pa. Feb. 22, 1991); *see also Oldrati v. Apfel*, 33 F. Supp.

2d 397, 399 (E.D. Pa. 1998).  The "court may accept, reject, or modify, in whole or in part, the

findings and recommendations" contained in the report.  28 U.S.C. § 636(b)(1)(C).

### B.      Habeas corpus petitions under 28 U.S.C. § 2254 – Review Of Applicable Law

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), "state

prisoners must give the state courts one full opportunity to resolve any constitutional issues by

invoking one complete round of the State's established appellate review process" before seeking

federal habeas review.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  Where a petitioner

has failed to properly present his claims in the state court and no longer has an available state

remedy, he has procedurally defaulted those claims.  *See id.* at 847-48.  An unexhausted or procedurally defaulted claim cannot provide the basis for federal habeas relief unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *See Coleman v. Thompson*, 501 U.S. 722, 732-33, 750 (1991) (explaining that a "habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion [because] there are no state remedies any longer 'available' to him").  The Supreme Court has held that the ineffectiveness of counsel on collateral review may constitute "cause" to excuse a petitioner's default.  *See Martinez v. Ryan*, 566 U.S. 1 (2012).  The fundamental miscarriage of justice exception "applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'"  *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).  "Put differently, the exception is only available when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'"  *Coleman v. Greene*, 845 F.3d 73, 76 (3d Cir. 2017) (quoting *McQuiggin*, 133 S. Ct. at 1936; *Schlup*, 513 U.S. at 316).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt."  *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (internal quotations omitted).  "A federal habeas court must accept a state-court finding unless it was based on 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  *Davis v. Ayala*, 576 U.S. 257, 271 (2015)

(quoting 28 U.S.C. § 2254(d)).[1] *See also Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)

(holding that there is a "doubly deferential judicial review that applies to a *Strickland* claim

evaluated under the § 2254(d)(1) standard" because the question before a federal court is not

whether the state court's determination was correct, but whether the determination was

unreasonable); *Hunterson v. Disabato*, 308 F.3d 236, 245 (3d Cir. 2002) ("[I]f permissible

inferences could be drawn either way, the state court decision must stand, as its determination of

the facts would not be unreasonable.").  "State-court factual findings, moreover, are presumed

correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing

evidence.'" *Rice v. Collins*, 546 U.S. 333, 338-39 (2006) (citing 28 U.S.C. § 2254(e)(1)); *Fahy v.

Horn*, 516 F.3d 169, 181 (3d Cir. 2008) (holding that "a federal habeas court must afford a state

court's factual findings a presumption of correctness and that [] presumption applies to the

factual determinations of state trial and appellate courts").

### C.    Claims of ineffective assistance of counsel – Review of Applicable Law

To establish counsel's ineffectiveness, a petitioner must show: (1) counsel's performance

fell below an objective standard of reasonableness; and (2) the performance was prejudicial to

the defense.  *Strickland v. Washington*, 466 U.S. 668 (1984).  There is a strong presumption that

counsel is effective and the courts, guarding against the temptation to engage in hindsight, must

be "highly deferential" to counsel's reasonable strategic decisions.  *Marshall v. Hendricks*, 307

F.3d 36, 85 (3d Cir. 2002).  "[T]he performance inquiry must be whether counsel's

---

[1]     "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . .; or . . . resulted in a decision that was based on an unreasonable determination of the facts . . . ." 28 U.S.C. § 2254(d).

assistance was reasonable considering all the circumstances." *Id.* at 688.  The mere existence of alternative, even more preferable or more effective, strategies does not satisfy the first element of the *Strickland* test.  *Id.* at 86.  "Judicial scrutiny of counsel's performance must be highly deferential."  *Strickland*, 466 U.S. at 689 (explaining that courts should not second-guess counsel's assistance and engage in "hindsight, to reconstruct the circumstances of counsel's challenged conduct").  To establish prejudice under the second element, the petitioner must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Roe v. Flores-Ortega*, 528 U.S. 470, 482 (2000) (quoting *Strickland*, 466 U.S. at 694).  Where ineffectiveness is based on counsel's failure to investigate or call witnesses, the prejudice "showing may not be based on mere speculation about what the witnesses [counsel] failed to locate might have said."  *United States v. Gray*, 878 F.2d 702, 712 (3d Cir. 1989).  The court must consider the totality of the evidence and the burden is on the petitioner.  *Strickland*, 466 U.S. at 687, 695.

When considering ineffective assistance of counsel claims under § 2254, the question before a federal court is not whether the state court's determination was correct, but whether the determination was unreasonable.  *Knowles*, 556 U.S. at 123.  "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  *Id.* (describing "the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard").

## III.   BACKGROUND

The R&R summarizes the procedural and factual background of the case.  *See* R&R 1-6, ECF No. 16.  In the absence of objection to the procedural background, it is adopted and

incorporated herein.  Because Kinard asserts that the R&R contains misstatements of fact, the

factual background is quoted below, with the challenged portions in bold.  The R&R states:

> . . .

> The facts surrounding Kinard's conviction occurred on January 14, 2010, when shots were fired at Michael Greene, Sr., his son Michael Greene, Jr., and his daughter, as they left their house in the Abbotsford Homes housing development and entered the family car. [*Commonwealth v. Kinard*, No. 120 EDA 2015, 2016 WL 834547 at *2 (Pa. Super. 2016).] Fortunately, no one was injured. *Id*. The shooter fled the scene down a nearby set of steps, accidentally dropping his cell phone as he ran. *Id*.

> Police Officer Matthew Lally testified that, at the crime scene, he noticed two women, one of whom – later identified as Tiera Bond – was making calls on her cell phone and then listening to see if she could locate a ring. *Commonwealth v. Kinard*, 51-CR-2209-2010, *Notes of Testimony* [N.T.] January 4, 2011, at 96:9-17. At the same time, the phone dropped at the crime scene was repeatedly ringing. *Id*. at 95:18-24. Officer Lally approached Bond and determined that she was calling the dropped phone. *Id*. at 96:19-27:9. Bond was taken to "Northwest Detectives" where she was interviewed by Detective Stephen Grace. *Id*. at 97:13-14; 128:18-129:1.

> Detective Grace testified at Kinard's trial that, when the dropped phone dialed Bond's number, a photograph of Kinard appeared on the screen of Bond's phone. *Id*. at 125:24-126:17, 132:4-8. Detective Grace also testified that both Kinard and Bond were known to him from an earlier investigation, in which several people were shot at a McDonald's restaurant. Kinard was one of the victims, and Bond was an eyewitness. *Id*. at 127:7-20; 129:2-5. Michael Greene, Jr., was charged as a co-conspirator in that case, and was awaiting trial at the time his family was fired upon. *Id*. at 128:4-14. The prosecution's theory was that Michael Greene, Jr., was Kinard's intended victim, in retaliation for the McDonald's shooting. *Notes of Testimony*, January 6, 2011, at 83:1-19.

> > As related by the trial court:
> > After executing search warrants for [Kinard]'s home and his grandmother's home, police recovered a .45 caliber Colt semiautomatic handgun and a .22 caliber revolver, which matched the two .22 bullets recovered from the scene of the shooting. Police recovered [Kinard]'s DNA from the trigger of the .22 revolver and the .45 Colt semiautomatic handgun. Police also recovered an iPhone box with a serial number matching the iPhone found at the scene of the shooting. Police recovered letters and papers addressed to [Kinard], including [Kinard]'s identification.

> 2016 WL 834547 at *1, *excerpt from Commonwealth v. Kinard*, CP-CR-0002209-2010 (C.C.P. Philadelphia May 15, 2015).

> [The search warrants for Kinard's home and the home of his grandmother-3219 and 3220 North Spangler Street- were executed the same night of the shooting. *See* N.T. 01/04-11 at 106-08. Officer Laly testified that when he went to

this location from the crime scene, which was approximately six blocks away, he observed the Defendant exit the residence at 3219 North Spangler Street. *Id.* During a search of this residence, police found both firearms under a pillow in the bedroom. *See* N.T. 35-36, 01/05/11. An expert in firearms identification testified at trial that the spent shell casings recovered at the scene of the Greenes' shooting were fired from the .22 caliber revolver found during the search. *See* N.T. 99, 01/05/11.]

On January 3, 2011, the day of jury selection in Kinard's trial, the Commonwealth gave to trial counsel[2] for the first time a copy of the statement detectives had taken from Tiera Bond. *Id.* at 143:4-8; 144:21-24. The statement had been placed in the file for the McDonald's shooting, and for that reason, the prosecution was not aware of it earlier. *Id.* at 155:19-24. The parties in this habeas case agree that Bond made some representation in her statement that indicated or implied that the individual who shot at the Greenes was a dark-skinned African American man.

Some unclarity exists as to the contents of Bond's statement. Neither Kinard nor the Commonwealth has been able to provide a copy of the statement to this Court. *Commonwealth's Response* at 5, n.1. **No party has alleged that Bond saw anyone shoot at the Greene family.** *Notes of Testimony*, January 4, 2011 at 129:9-14.[3] **Michael Greene, Sr., testified that before he entered his car, he saw "two guys" standing directly across the street from him.** *Id.* **at 40:20-25. However, he did not testify to seeing a woman, and even Detective Grace, who called Bond an "eyewitness", knew only that she was seen by Detective Timothy Hartman when he "processed the scene", obviously following the crime.** *Id.* **at 120:13-14.** Detective Hartman did not mention Bond in his testimony. *Notes of Testimony*, January 5, 2011 at 17:15-75:11 Therefore, although both parties and **the Pennsylvania court opinions consistently refer to Bond's "description of the shooter," this appears to be inaccurate. It does not appear that Bond claimed to see a person shoot at the Greenes.**

**Rather, the trial transcript suggest that Detective Grace asked Bond to describe the person whose number she had been dialing, and/or whose number appeared in her phone under the nickname "Booda," and that she described Booda as a dark-skinned African-American man.** *See*, *id.* **at 141:13-17.2** The prosecution maintained at trial that Booda was Kinard's nickname, and showed the jury a photograph of Kinard's arm, which bore a large tattoo of the word "Booda."

---

2       Kinard was represented by two attorneys at trial.
3       The jury heard this testimony: "PROSECUTOR: So the shooting where Kinard was shot, Tiera Bond is the witness that identifies the shooter? DETECTIVE GRACE: Yes. PROSECUTOR: And she is also a person that was present at the time that Mr. Kinard is alleged to have been shooting at the [Greenes' car]? DETECTIVE GRACE: I don't think she ever indicated that she was present." *See*, *also*, *Notes of Testimony*, January 5, 2011, at 6:17-18: "PROSECUTOR: These alleged persons [Bond and the woman accompanying her] were not even eyewitnesses to the actual incident."

*Id*. at 133:23-135:12. On the first day of trial, Kinard's defense counsel tried to cross-examine Detective Grace about Bond's description of the man known to her as Booda, to establish that it was inconsistent with Kinard's physical appearance. *Notes of Testimony*, January 4, 2011, at 141:13-15. The trial judge, however, sustained the Commonwealth's objection on hearsay grounds to anything Bond told Detective Grace. *Id*. at 141:6-12.

At that point, Kinard's trial counsel made an oral motion for a mistrial on the basis that the Commonwealth had violated its duty under *Brady v. Maryland*, 373 U.S. 83 (1963) to disclose exculpatory evidence by producing Bond's statement only the day before. *Id*. at 142:25-144:20. Counsel argued that Bond's description of Booda as dark-skinned was exonerating, since it was inconsistent with Kinard's appearance. *Id*. at 143:9-19. Therefore, they argued, they should have been informed about Bond's statement earlier, or should be allowed to admit evidence obtained from the statement. After hearing argument from both parties, the trial court denied Kinard's motion for a mistrial. *Notes of Testimony*, January 5, 2011, at 8:5-7.

. . .

R&R 1-4.

The R&R then addresses Kinard's three habeas claims: (1) that trial counsel were ineffective for failing to move for a continuance to investigate Tiera Bond when learning of her statement on the day before trial; (2) that trial counsel were ineffective for not investigating and calling Tiera Bond as a witness, which PCRA [Post-Conviction Relief Act] counsel was ineffective for failing to raise in the state courts; and (3) that the prosecutor's reference during sentencing to Kinard's gang membership, facts not in evidence, was misconduct. In recommending denial of the first claim, the Magistrate Judge concludes Kinard has not demonstrated prejudice. *See* R&R 11-14. The R&R explains that to the extent the second claim is based on a failure to investigate Kinard has not shown prejudice, and that to the extent the claim is based on failing to call Bond as a witness it is procedurally defaulted. *Id.* 14-17. The Magistrate Judge, finding that Kinard's sentence would not have been different if the prosecutor's statement at sentencing were not made, recommends also denying the third claim. *Id.* 17-20.

Kinard has filed objections to the R&R.  *See* Obj., ECF No. 22.  He argues: (1) the R&R contains misstatements of fact regarding the trial transcript; (2) the R&R misstates *Lockhart v. Fretwell*, 506 U.S. 364 (1993), in the standard of review; (3) it was not objectively reasonable for Kinard's counsel to not request a continuance in order to interview Bond and to instead move for a mistrial; (4) the R&R employs the incorrect standard by stating that in order for Kinard to show that his counsel were ineffective for failing to call Bond as a witness, he would need to show that Bond was available and willing to testify; and (5) the sentencing judge did not impose the lowest possible sentence.  *See id.*

In response, Respondents assert that while some, not all, of the objections should be sustained, the conclusions in the R&R are correct and the habeas claims should be denied.  *See* Resp. Obj., ECF No. 22.  Specifically, they agree that the R&R contains misstatements of fact, misstated *Lockhart*, applied the incorrect standard regarding witness availability, and incorrectly found that the trial judge gave Kinard the lowest possible sentence.  *See id.*  But Respondents contend that Kinard was not prejudiced by trial counsel's alleged ineffectiveness or by any improper remarks made by the prosecutor at sentencing.  *See id.*

IV.   **ANALYSIS**

A.   **Objections to the R&R's factual background are sustained in part.**

Kinard objects to the statement in the factual background of the R&R that: "No party has alleged that Bond saw anyone shoot at the Greene family."  Obj. 2 (citing R&R 3).  Respondents assert that the objection to this statement is supported by the record.  They cite to a sidebar conversation in which defense counsel told the court: "In my opening statement I told the Jury . . . that there would be evidence that a dark-complected person was the perpetrator."  *See* Resp. Objs. 3 (quoting N.T. 156, 01/04/11).

Kinard argues that the Magistrate Judge's misstatement of the evidence is repeated when the R&R says: "the Pennsylvania court opinions consistently refer to Bond's 'description of the shooter,' this appears to be inaccurate. It does not appear that Bond claimed to see a person shoot at the Greenes." *Id.* In support of both objections, Kinard cites to a sidebar conversation in which the following exchanged occurred:

> [Defense counsel:] . . . It was not until the day of trial, the day the trial started, which was January the 3rd, 2011 that one crucial piece of information was just provided to us. That is a **statement of Tiera Bond**.
> In that **statement Miss Bond gives a description of the alleged perpetrator to Detective Grace.** That description is in direct contradiction to the appearance of our client. It states --
> THE COURT: First of all, I am not too sure if it is a direct contradiction.
> [Defense counsel:] Well, our client is a light-skinned African American male. It states that the person who did the crime was a dark-complected person. And these materials were not turned over until yesterday, and I move for a mistrial.

Obj. 2 (quoting N.T. 143, 01/04/11) (emphasis added by Kinard). Kinard asserts that because no one corrected defense counsel's choice of words that Bond's statement contained a "description of the alleged *perpetrator*" and "that the person *who did the crime* was a dark-complected person," the R&R is incorrect. *See* Obj. 2-3 (emphasis added).

Additionally, Kinard challenges, as confusing, the Magistrate Judge's description of the testimony of Michael Greene, Sr. and of Detective Grace that neither testified Bond was a witness to the shooting. *See id.* Kinard also objects to the Magistrate Judge's factual finding that ". . . the trial transcript suggest[s] that Detective Grace asked Bond to describe the person whose number she had been dialing, and/or whose number appeared in her phone under the nickname 'Booda,' and that she described Booda as a dark-skinned African-American man," as both confusing and speculative. *See* Obj. 3. Kinard, without offering support for his position, further claims that the better interpretation of the trial transcripts is that Bond told the officer "Booda" is Kinard. *See id.* 3-4.

Based upon de novo review of the trial transcripts only, this Court would agree with the Magistrate Judge's factual findings.[4]  Nevertheless, because of the presumption of correctness and deference owed to a state court's factual findings, this Court must sustain in part Kinard's objections.  Significantly, in addition to Bond's description of "a dark-complected person," which the Magistrate Judge finds referred to Booda based on the trial testimony, the state appellate court discussed Bond's comparison of Kinard to the shooter, *see Commonwealth v. Kinard*, 237 A.3d 1085 (Pa. Super. Ct. 2020).  Specifically, the state court found that "Bond told police 'the shooter was someone who was 'shorter and lighter in complexion' than" Kinard.  *See id.*  Given Bond's complexion and height comparisons, as well as the fact that the state court had Bond's statement, which was excluded from the trial testimony on hearsay grounds and not otherwise available for this Court's review because it is now missing, this Court cannot conclude by clear and convincing evidence that the state court's finding that Bond was describing the "shooter" was incorrect.  Accordingly, Kinard's objections to the statements "No party has

---

[4]      The parties rely on counsel's statements during a sidebar to support Kinard's objections, but the trial testimony that led to the sidebar conference is telling.  Detective Grace was asked: "Do you recall if Miss Bond gave a description of the person she knows as Booda?" to which he answered: "Yes, I believe she did."  Defense counsel then asked: "Okay. Do you remember her describing him as a dark-complected. . . ."  *See* N.T. 141:14-19, 01/04/11.  The prosecutor made a hearsay objection, which eventually led to the sidebar conference where counsel referred to Bond's "description of the alleged perpetrator."  The question posed to the Detective, however, related to Bond's description of Booda.  Furthermore, the case was based on circumstantial evidence and it was the prosecutor's argument that the shooter dropped his phone at/near the shooting, that the owner of the phone was Booda, and that Booda was Kinard.  Defense counsel's reference to Bond's description of Booda as a description of the perpetrator was consistent with this theory of the case, such that there was no need to correct counsel's statement at sidebar.  Similarly consistent with this theory was defense counsel's statement at sidebar that in his opening he informed the jury the perpetrator was dark complected.  Moreover, in his opening statement defense counsel actually said: ". . . you will hear evidence that a young lady named Tiera Bond was interviewed by the police.  And she told, she told the detective that she knows a guy named Booda. . . . Miss Bond said that Booda is a [] dark-complected, black male."  *See id.* 34:8-14.  The trial transcripts therefore support the Magistrate Judge's factual findings.

alleged that Bond saw anyone shoot at the Greene family" and ". . . the Pennsylvania court opinions consistently refer to Bond's 'description of the shooter,' this appears to be inaccurate. It does not appear that Bond claimed to see a person shoot at the Greenes"; - the objections are therefore sustained.

However, Kinard's objections to the Magistrate Judge's description of the testimony of Michael Greene, Sr. and of Detective Grace are overruled.  The trial transcripts support the Magistrate Judge's factual findings regarding the testimony.  *See, e.g.* N.T. 141:14-19, 01/04/11. Although the Court sustains the objection as to what the trial transcript "suggests" in light of the state court's findings, Kinard's objection is overruled to the extent it is based on trial testimony or seeks a different interpretation of the testimony.

**B.      The objection to the R&R's interpretation of *Lockhart* is sustained.**

In the legal standards section of the R&R regarding ineffective assistance of counsel claims, the R&R concludes: ". . . In other words, the petitioner must show that the 'result of the proceeding was fundamentally unfair or unreliable.' *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)."  R&R 11.  Kinard objects to this sentence as misstating *Lockhart*.  *See* Objs. 4 (quoting the full passage of *Lockhart*, 506 U.S. at 369-70).  Respondents agree that this objection should be sustained.  *See* Resp. 3.

After review, the objection is sustained.  *See Williams v. Taylor*, 529 U.S. 362, 393 (2000) (finding that if a defendant is able to show that his attorney was ineffective and that the ineffectiveness probably affected the outcome of the proceeding, the court need not conduct a separate inquiry into fundamental fairness).

**C.     Trial counsel were not ineffective for failing to request a continuance.**

In denying Kinard's claim that trial counsel were ineffective for failing to move for a trial continuance to investigate Bond, the Magistrate Judge concludes that the Pennsylvania Superior Court's decision was based on an unreasonable interpretation of the facts because contrary to the state court's findings, Kinard was precluded from conveying Bond's statement to the jury.  The R&R explains that "the importance of the investigation would not only to have been to obtain further details of the 'shooter's' appearance, as the Superior Court assumed, but to obtain Bond's testimony in a form that would have been admissible at trial, whether as testimony, or possibly as an affidavit if Bond had proved unavailable at the time of trial, . . . [which] would undoubtedly have constituted 'new information' in Kinard's trial."  R&R 12.  The Magistrate Judge therefore finds that contrary to the Superior Court's determination, counsel's performance was in fact substandard.  *See id.*  Nevertheless, the R&R concludes that the Superior Court's decision was not contrary to federal law because Kinard cannot show a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different.  *See id.* 12-14. In the absence of prejudice, the Magistrate Judge recommends that relief be denied because Kinard has not shown an injury under *Strickland*.  *See id.*

Kinard objects to the alleged failure of the Magistrate Judge and of the state court to consider whether trial counsel's performance was deficient and, instead, to address only whether Kinard was prejudiced by counsel's purported errors.  *See* Objs. 5-6.  This objection is overruled for two reasons.  First, contrary to Kinard's suggestion, the Magistrate Judge did in fact consider whether trial counsel's performance was deficient.  *See* R&R 12-13 (". . . This being so, it could be concluded that trial counsel were ineffective in failing to obtain a continuance to pursue admissible evidence from Bond.").  Second, although the state court assumed deficient

performance *arguendo*, there is nothing contrary to federal law in taking such an approach.  *See Strickland*, 466 U.S. at 697 (holding that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies").

Even where trial counsel's performance was deficient for failing to investigate a witness's potential testimony, a habeas petitioner must also show prejudice.  The Magistrate Judge is correct that to show prejudice for counsel's failure to investigate Bond, "[s]uch a showing may not be based on mere speculation about what [Bond] might have said."  *See Gray*, 878 F.2d at 712.  Because Kinard offers nothing more than speculation, he has not shown prejudice.  *See United States v. Young*, No. 12-cv-3788, 2013 U.S. Dist. LEXIS 77195, at *7 (E.D. Pa. May 31, 2013) ("Without any evidence as to what an investigation . . . would have revealed, the Petitioner cannot establish sufficient prejudice to warrant habeas relief on this issue.").  Kinard is not relieved of his obligation to provide more than mere speculation because Bond's statement is now missing or because this Court, applying the highly deferential standard of review, has adopted the state court's factual findings that Bond gave police a description of the shooter.  *See Duncan v. Morton*, 256 F.3d 189, 201-02 (3d Cir. 2001) (concluding that in light of the habeas petitioner's failure to present sworn testimony from the witness he alleges counsel was ineffective for failing to interview, instead relying on an unsworn letter the witness wrote from jail, the petitioner failed to establish prejudice); *United States v. Smith*, No. 11-132, 2017 U.S. Dist. LEXIS 42049, at *7-11 (E.D. Pa. Mar. 23, 2017) (holding that the petitioner failed to show he was prejudiced by counsel's failure to investigate five "alibi" witnesses because, although the court was informed of statements the witnesses purportedly gave to the government, the petitioner failed to provide sworn statements detailing the testimony they would

have provided).  In fact, the Pennsylvania Superior Court found that "Bond's description of the shooter 'did not rule out [Kinard] as a possible shooter.'"  *Kinard*, 237 A.3d 1085.[5] Accordingly, Kinard's objection to the Magistrate Judge's conclusion that he has not demonstrated prejudice based on mere speculation of Bond's statement, *see* Objs. 6, is overruled. *See Duncan*, 256 F.3d at 201-02.  This failure alone dictates that the claim be denied.

However, Kinard has failed to show prejudice for a second reason too.  Given the totality of the circumstances, there is no reasonable probability that had Kinard's trial counsel requested a continuance to investigate Bond, the result of the proceeding would have been different.  At trial, the Commonwealth presented evidence of Kinard's motive related to a prior shooting, evidence that only hours after the shooting the handgun used to shoot at the Greenes was found in the residence Kinard was seen exiting, and DNA evidence that further connected Kinard to that handgun.  The Commonwealth also presented evidence that a cellphone recovered in the area the shooter fled belonged to Booda, that Kinard had the word "BOODA" tattooed on his arm, and that a picture of Kinard appeared on the screen of Bond's phone when she called Booda.  Additionally, as the Magistrate Judge recounted, no one testified to having seen a

---

[5]      Kinard's assertion that the trial testimony shows Bond identified the shooter as someone other than Kinard, *see* Objs. 9, is therefore incorrect.  Similarly, Kinard's argument that trial counsel's opening statement that Bond told police Booda is a dark-complected black male and attempted cross-examination of Detective Grace regarding this description "conclusively" demonstrate Bond identified Booda as someone other than Kinard, *see* Objs. 6, is unsupported. Bond's opinion of "dark complected" is subjective and this Court, having seen a color photograph of Kinard from his arrest on January 15, 2010, cannot find "conclusively" that Kinard does not fit that description.  *See* Post-Sentence Motion, Ex. A.  The trial judge, with Kinard physically in front of him, determined the same.  *See* N.T. 143:9-15, 01/04/11 (In response to defense counsel's statement at sidebar that Bond's description of Booda was "in direct contradiction to the appearance of our client [Kinard]," the trial judge stated: "First of all, I am not too sure if it is a direct contradiction.").  The Pennsylvania Department of Corrections, which lists Kinard's complexion as "medium," further supports these conclusions.  *See* http://inmatelocator.cor.pa.gov (last accessed October 20, 2022).

woman (Bond) at the time of the shooting.  Given this, coupled with the fact that Bond was in a romantic relationship with Kinard at the time of the shooting, her testimony is unlikely to have carried much weight with a jury.  *See Romero v. Johnson*, No. 16-5070 (MCA), 2022 U.S. Dist. LEXIS 116845, at *21 (D.N.J. June 29, 2022) (explaining that when determining whether trial counsel's failure to investigate the case and present witnesses was prejudicial, the court should consider the impact of the absent witness and the likely impeachment of the uncalled defense witness).  Kinard's suggestion that Bond's testimony would have cast doubt on all this evidence is unsupported.  His remaining objections to the R&R regarding this claim are thus overruled.

### D.    Kinard has not shown that he was prejudiced by counsel's failure to call Bond as a witness.

The Magistrate Judge explains that Kinard's claim of ineffectiveness relating to trial counsel's failure to call Bond as a witness is procedurally defaulted.  *See* R&R 14-17.  Kinard attempted to raise this claim in the Pennsylvania Superior Court, but it was deemed waived because it had not been sufficiently presented to the PCRA court.  Kinard concedes that the claim is procedurally defaulted, but argues that the default is excused because PCRA counsel was ineffective for not properly presenting the claim.  The Magistrate Judge rejects this argument, stating that because Kinard has not shown Bond was available and willing to testify, he has not shown the existence of a meritorious underlying claim of counsel ineffectiveness.  *See id.* (citing *Moore v. DiGuglielmo*, 489 F. App'x 618, 625-26 (3d Cir. 2012)).  The R&R also notes that its refusal to excuse procedural default is consistent with the Pennsylvania Superior Court's alternative determination that the claim lacked merit under *Strickland*.

Kinard objects to the R&R's reliance on *Moore* for its discussion regarding witness availability based on the Third Circuit's later rejection of the witness-availability requirement in *Grant v. Lockett*, 709 F.3d 224 (3d Cir. 2013).  *See* Objs. 8.  Respondents agree that the R&R cites to

the wrong standard, but assert the Magistrate Judge correctly concludes the claim fails on the merits. *See* Resp. Objs. 5.

Under *Grant*, absent extenuating circumstances, a witness's willingness to testify "is irrelevant" because counsel can subpoena the witness. *See Grant*, 709 F.3d at 239 n.10. Kinard's objection based on *Moore* is therefore sustained. However, for the reasons set forth in the previous section, Kinard has failed to show that he was prejudiced by trial counsel's failure to investigate and/or call Bond as a witness. The claim fails on its merits. PCRA counsel was therefore not ineffective for failing to raise the claim and the procedural default is not excused. *See Cox v. Horn*, 757 F.3d 113, 119 (3d Cir. 2014) (explaining that under *Martinez*, a procedural default will not bar review if the default was caused by ineffective assistance of PCRA counsel and the underlying claim of trial counsel ineffectiveness is "'substantial' meaning 'the claim has some merit'" (quoting *Martinez*, 132 S. Ct. at 1318-20)).

The habeas claim is therefore denied and dismissed.

**E.      Kinard was not prejudiced by the prosecutor's statements at sentencing.**

The Magistrate Judge recommends denying the habeas claim that the prosecutor's improper statements at sentencing regarding Kinard's alleged gang membership, facts which were not in evidence, caused prejudice. *See* R&R 17-20. Kinard claimed that the sentencing judge's comment about "30th and Allegheny" was sufficiently similar to the prosecutor's allegation of Kinard's membership in the "33rd and Allegheny" gang to lead to the reasonable inference that gang membership was never far from the sentencing judge's mind. *See* Habeas 23, 29, ECF No. 1 (citing *United States v. Tucker*, 404 U.S. 443 (1972) (holding that a sentence based on incorrect information may violate due process)). He further argued that because

attempted murder did not provide for a mandatory minimum sentence, the state courts'[6] finding

that the sentencing judge imposed "the lowest possible sentence" was incorrect.  Rejecting this

argument, the Magistrate Judge concludes that each of the three counts of attempted murder

carried a mandatory minimum of five years' imprisonment, that the state courts were correct in

stating that Kinard's sentence of fifteen to thirty (15-30) years was the shortest possible sentence,

and, therefore, that Kinard was not prejudiced by any improper statements.  *See* R&R 19.

In his objections to the R&R, Kinard asserts that because the sentencing judge could have

run the counts concurrently, a fifteen to thirty (15-30) year sentence was not "the lowest possible

sentence." *See* Objs. 10-13.  Respondents agree that Kinard could have received a lower

sentence, *see* Resp. Objs. 5-6, but contend he was not prejudiced because there is no evidence the

sentencing judge considered the prosecutor's improper comments in fashioning Kinard's

sentence, *see* Resp. Hab. 13, ECF No. 15.  Respondents argue that when read in context, it is

clear that the judge was referencing public safety and community protection, which is an

appropriate sentencing factor.  *See id.*; Resp. Hab. 13.

Because the counts could have been run concurrently, Kinard did not receive the "lowest

possible sentence" and Kinard's objection in this regard is sustained.  Notably however,

immediately after stating that the "trial court imposed the lowest possible sentence available to

[Kinard]," the state court acknowledged that "the trial court imposed consecutive sentences."

*See* Opn. dated May 5, 2015 at 8.  This suggests that despite referring to the imposed sentence as

---

[6]     This finding was made in the trial court's 1925(a) opinion authored after the sentencing
judge had retired.  *See* Rule 1925(a) opinion, dated May 5, 2015.  The Pennsylvania Superior
Court affirmed Kinard's sentencing challenge "on the basis of that opinion."  *See Kinard*, No.
120 EDA 2015, 2016 WL 834547 (citing *id.*).

the "lowest possible sentence," the state court recognized Kinard could have received a sentence as low as five to ten (5-10) years.  *See Hunterson*, 308 F.3d at 245.

Regardless, the state court reasoned that Kinard could not show he was prejudiced by the prosecutor's remarks for two additional reasons.  First, Kinard's sentencing guidelines called for a minimum sentence of seventy-eight to ninety-six (78-96) months, plus or minus twelve (12) months, but the sentencing judge departed below that range.  *See* Opn. dated May 5, 2015 at 8. Second, contrary to Kinard's suggestion, when the sentencing judge referenced "the community of 30th and Allegheny," he was not referring to Kinard's gang membership, but to a proper sentencing consideration.  *See id.* (quoting 42 Pa. C.S. § 9721(b) (providing that when determining the sentence, "the court shall follow the general principle that the sentence imposed should call for total confinement that is consistent with . . . the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant")).

This Court agrees that the length of Kinard's sentence tends to negate any showing of prejudice.  Although the counts could have been run concurrently, which would have meant a lower overall sentence, the judge sentenced Kinard below the guidelines range and well below the statutory maximum of seventy-seven (77) years.  *See* N.T. 14:11, 03/11/11.  *See Siena v. Carroll*, No. 03-959-JJF, 2005 U.S. Dist. LEXIS 5630, at *15-16 (D. Del. Apr. 5, 2005) (concluding that where "a sentence falls within statutory limits and the petitioner alleges a Due Process violation, he must demonstrate that the state court's sentencing decision was wholly devoid of discretion or amounted to an arbitrary or capricious abuse of discretion, or that an error of law resulted in the improper exercise of the sentencer's discretion and thereby unjustly deprived the petitioner of his liberty" (internal quotations omitted)).  The sentence was also

significantly below what the Commonwealth attorney requested.  The prosecutor recommended a

sentence of ten to twenty (10-20) years for each attempted murder to run consecutively for a total

term of thirty to sixty (30-60) years.  *See id.* 14:9-14; *Olmedo-Serrano v. Sec'y Pa. Dep't of*

*Corr.*, 684 F. App'x 260, 267 (3d Cir. 2017) (determining that trial counsel was not ineffective

for failing to seek reconsideration of his sentence because the sentencing court imposed a

sentence just above the Pennsylvania sentencing guidelines recommendation, well below the

statutory maximum, and below the State's requested sentence).

Second, when read in context, this Court agrees with the state courts that the sentencing

judge did not consider Kinard's gang membership, but the need for the sentence to protect the

community.  The judge stated:

> . . . what you see is that the defendant had every opportunity to do the right thing,
> loving family, support in his community, all of these things, and this jury said that
> he elected to get involved in one of the very, very serious crimes.
>      I looked at the young man's GED. It's even sadder because he's a young
> man who has some ability to go out in life and make a life for himself. He's not
> retarded. He's far from it, far from it, and that's always sad. That's always sad.
> Then it's my duty to sentence him and take into consideration the victims, but more
> important, the whole community in that area, the Roxborough High School
> community, the community of Abbotsford Homes, *the community of 30th and*
> *Allegheny*, and taking it all into consideration, I have to come up with something I
> feel balances both sides.

N.T. 28:9-29:3, 03/11/11 (emphasis added).  The judge clearly contrasts/balances the

characteristics of Kinard with the need for the sentence to also account for the victims and the

whole community.  It is only in consideration of the whole community that the sentencing judge

referenced the community of 30th and Allegheny, along with two other specific communities.  It

is therefore not reasonable to conclude that because of this street reference the sentencing judge

improperly considered Kinard's alleged gang affiliation.  *See Carter v. Mooney*, No. 15-4896,

2016 U.S. Dist. LEXIS 74142, at *50-51 (E.D. Pa. June 6, 2016) (determining that where the

trial judge did not make constitutionally impermissible comments in setting forth her reasons for imposing the sentence and did not impose the maximum sentence, the state court's decision rejecting the claim that the sentence was imposed vindictively was not an unreasonable application of federal law).  The state courts' conclusions that the sentencing judge was, instead, considering the need for the sentence to protect the public is strengthened by the fact defense counsel had raised this issue by arguing that Kinard was not someone the community needed to be protected from.  *See* N.T. 6:18-25, 03/11/11 (". . . there's nothing to say, Judge, stop, this is somebody the community needs protection from. . .").

Accordingly, the state courts' conclusion that Kinard was not prejudiced by the prosecutor's comment was not based on an unreasonable determination of the facts, nor was it contrary to federal law as established in *Tucker*.

### F.       There is no basis for the issuance of a certificate of appealability.

A certificate of appealability ("COA") should only be issued "if the petitioner 'has made a substantial showing of the denial of a constitutional right.'"  *Tomlin v. Britton*, 448 F. App'x 224, 227 (3d Cir. 2011) (citing 28 U.S.C. § 2253(c)).  "Where a district court has rejected the constitutional claims on the merits, . . . the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.*

For the reasons set forth herein and in the R&R, Kinard has not made a substantial showing of the denial of a constitutional right, nor would jurists of reason find the Court's assessment debatable or wrong.  A COA is denied.

## V.    CONCLUSION

After de novo review and for the reasons set forth herein, the R&R is adopted in part. First, objections to the factual background are overruled in part and sustained in part.  To the extent the Magistrate Judge made factual findings as to the trial testimony, the findings are well supported and the objections are overruled.  To the extent that the R&R's findings conflict with the state court, the objections are sustained due to the high deference owed to the state court. Second, Kinard's objection regarding the *Lockhart* standard is sustained because the Supreme Court has rejected this reading of the case.  Third, although Kinard's objection relating to the showing as dictated by *Moore* is sustained, the Magistrate Judge correctly concluded that Kinard failed to show he was prejudiced by trial counsel's failure to investigate and/or call Bond as a witness in light of the evidence against him.  Finally, Kinard's objection that the sentencing judge did not impose "the lowest possible sentence" is sustained, but because Kinard failed to show that the sentencing judge relied upon the improper statements made by the prosecutor at sentencing, he was not prejudiced by the statements.  The Magistrate Judge's recommendation to deny and dismiss the habeas petition is adopted.  There is no basis for a certificate of appealability.

A separate Order follows.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge